

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: February 14, 2023.**

_____
_____
CRAIG A. GARGOTTA
CHIEF UNITED STATES BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE No. 22-50925-cag |
| | § | |
| PAUL DANIEL MEINSCHER | § | |
| and MILDRED LILLIAN MEINSCHER, | § | Chapter 7 |
| | § | |
| Debtors. | § | |

**ORDER OVERRULING OBJECTIONS TO THE AMENDED CLAIMS OF EXEMPTIONS (ECF NO. 19)**

Came on for consideration, in the above-styled and numbered bankruptcy case, John Patrick Lowe's, in his capacity as Chapter 7 Trustee, Objections to the Amended Claims of Exemptions (ECF No. 19)[1] ("Objection"). The Court held a hearing on the matter on January 26, 2023. The Court took the matter under advisement at the hearing. For the reasons expressed herein, the Objection is OVERRULED.

---
[1] "ECF" denotes electronic filing number.

## JURISDICTION

As a preliminary matter, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (exemptions from property of the estate). Venue is proper under 28 U.S.C. §§ 1408 and 1409. This case is referred to this Court by the Standing Order of Reference entered in this District.

## FACTUAL AND PROCEDURAL HISTORY

Debtors Paul and Mildred Meinscher jointly filed for chapter 7 bankruptcy on August 9, 2022. At the time of their petition, the Meinschers filed Schedules, including Schedule C listing exemptions. (ECF No. 1, at 19-24). The Trustee objected to some of the Meinschers' claimed exemptions. (ECF No. 12). The Meinschers then filed an Amendment to Petition, Schedules A/B and C ("Amended Exemptions") (ECF No. 16).[2]

Relevant here, in their Amended Exemptions, the Meinschers claimed as exempt their interests in two life insurance policies. (*Id.* at 20). One policy (the "Mildred policy" or "Mildred's policy") is for a $50,000 death benefit on the life of Mildred. (*Id.*). Mildred is both the owner and the insured on her policy, and Paul is the beneficiary. (*Id.*). Mildred owns $13,318 worth of her policy. (*Id.*). The Meinschers' schedules claim $13,318 of the Mildred policy as exempt. (*Id.*). The second policy (the "Paul policy" or "Paul's policy") is for a $100,391.72 death benefit on the life of Paul. (*Id.*). Paul is both the owner and insured on his policy, and Mildred is the beneficiary. Paul owns $76,475.11 worth of his policy. (*Id.*). The Meinschers' schedules claim $76,475.11 of the Paul policy as exempt. (*Id.*). The schedules do not identify which spouse claims Mildred's policy or Paul's policy (collectively, the "policies") as exempt. (*Id.*).

---

[2] The Amended Schedules were admitted as Ex. 1. For consistency and clarity, the Court will use the ECF number instead of the exhibit number of evidence that is also on the docket in this case.

The Trustee then filed his Amended Objection on October 18. The Amended Objection parses Texas Insurance Code § 1108.051 to conclude that the statute "allows for exemption the rights of an 'insured' and of a 'beneficiary'. It does not allow exemption of the rights of an 'owner.'" (ECF No. 19, at 2). According to the Trustee, the

> Debtors have rights as the owners of the cash surrender value. But those rights are not exempt. The Debtors, as insureds, have no rights to the cash surrender value of the policies. The Debtors, as beneficiaries, have no current rights to the cash surrender value of the policies. Beneficiaries have no rights until the insured dies.

(*Id.* at 3). In other words, the Trustee maintains that the only rights the Meinschers have in the policies claimed as exempt are as the owners of their respective policies, but those rights are not exempt.

The Trustee also served Interrogatories, Requests for Admission and Request for Production of Documents to the Respondents (Ex. 2) on the Meinschers. The Meinschers returned responses (Ex. 3).[3] Request for Admission No. 1 reads: "Admit that neither of the Debtors, as beneficiaries of either policy, has any right, title or interest in the cash surrender value of either of the life insurance policies disclosed at docket entry 16, page 14, asset 31." (Ex. 3, at 1). The Meinschers answered "[a]dmit." (*Id.*). Request for Admission No. 2 reads: "Admit that neither of the Debtors, as insureds, has any right, title or interest in the cash surrender value of either of the life insurance policies disclosed at docket entry 16, page 14, asset 31." (*Id.*). The Meinschers answered "[d]eny." (*Id.*). Related Interrogatory No. 2 inquires: "If you fail to admit [Request for Admission No. 2], say why not, citing to any statutory, case law or other authorities." (*Id.*). In response, the Meinschers listed "Mr. Meinscher's Insurance Policy Section 12.2" and "Mrs.

---

[3] Ex. 3 contains both the Meinschers responses to the interrogatories and requests for admissions served in Ex. 2 and produces both life insurance policies.

3

Meinscher's Insurance Policy Section 9.2." (*Id.*). These sections define the rights of policy owners. (Ex. 3, at 36, 67).

The Meinschers filed a Response and Objection to the Trustee's Objection to Claims of Exemption ("Response") (ECF No. 24). The Meinscher's Response places great emphasis on all the roles the Meinschers play under the policies: "the Meinschers are the owners and the insureds of the policies. In addition, they are each other's beneficiaries." (*Id.* at 2). Further, the Meinschers argue that if owners could not claim the exemption, an amendment adding "cash surrender value" to the statute would be pointless.[4] (*Id.*). Because "the Meinschers hold all three designations simultaneously," the Meinschers contend they validly claimed the policies as exempt. (*Id.*). The Response then argues that cash surrender values of whole-life insurance policies have long been exempted (unless they were fraudulently created) in Texas, so depriving the Meinschers of this exemption would deprive the Meinschers of their "only source of financial security in preparation of the death of one spouse," a source they have paid into for nearly 30 years. (*Id.*). Lastly, the Meinschers ask the Court to consider a recent order from the Austin Division of this Court overruling a similar objection. *See* **In re Gordon**, No. 22-10311-TMD (Bankr. W.D. Tex. Sept. 14, 2022). The Trustee here was also the chapter 7 trustee in **Gordon**.

**Gordon** is pending appeal in the United States District Court for the Western District of Texas. The Meinschers submitted the Gordon's appellate brief in support of their position. (ECF Nos. 49 and 47). The Trustee submitted his appellate brief (ECF No. 46) and his reply brief (ECF No. 48) in support of his position in this case.

---

[4] The Response suggests the phrase "cash surrender value" is from the exemption statute. More accurately, the exemption statute contains the phrase "cash value." Tex. Ins. Code Ann. § 1108.051.

## ANALYSIS

Commencing a bankruptcy case creates an estate encompassing all legal and equitable interests in property of the debtor(s) as of the petition date, including any property that might potentially be exempt. 11 U.S.C. § 541(a). The debtor(s) may then claim as exempt certain property from the estate. 11 U.S.C. § 522. Debtor(s) may elect to use either federal (§ 522(d)) or state (§ 522(b)(2)) exemptions. Parties in interest, including the trustee, may object to property the debtor(s) claim as exempt. Fed. R. Bankr. P. 4003(b). The objecting party then bears the burden of proving that the exemptions are not properly claimed. Fed. R. Bankr. P. 4003(c).

Here, the Meinschers elected to use Texas state law exemptions. Specifically at issue is claims of exemptions under Texas Insurance Code §§ 1108.001 and 1108.051. Section 1108.001 clarifies that exemptions under the Texas Insurance Code are in addition to the exemptions listed under the Texas Property Code. Tex. Ins. Code Ann. § 1108.001 (West 2021). Section 1108.051 provides:

> (a) Except as provided by Section 1108.053, this section applies to any benefits, including the cash value and proceeds of an insurance policy, to be provided to an insured or beneficiary under:
>   (1) an insurance policy or annuity contract issued by a life, health, or accident insurance company, including a mutual company or fraternal benefit society; or
>   (2) an annuity or benefit plan used by an employer or individual.
> (b) Notwithstanding any other provision of this code, insurance or annuity benefits described by Subsection (a):
>   (1) inure exclusively to the benefit of the person for whose use and benefit the insurance or annuity is designated in the policy or contract; and
>   (2) are fully exempt from:
>     (A) garnishment, attachment, execution, or other seizure;
>     (B) seizure, appropriation, or application by any legal or equitable process or by operation of law to pay a debt or other liability of an insured or of a beneficiary, either before or after the benefits are provided; and
>     (C) a demand in a bankruptcy proceeding of the insured or beneficiary.

Tex. Ins. Code Ann. § 1108.051 (West 2021).[5] The Trustee objects that the Meinschers cannot exempt their life insurance policies under this statute.

The Trustee has not met his burden for three reasons. First, the Trustee confuses an existing life insurance policy's cash surrender value with the cash paid out from a surrendered life insurance policy. Second, the Trustee argues that the Meinschers cannot claim the exemptions as owners of the policies, but that question of law is of no consequence in this dispute. Third, the Meinschers are entitled to claim the exemptions as the insured on their policies.

## I. The Meinschers have Exempted the Values in their Existing Policies, Not the Surrendered Cash Value of the Policies.

First, the Trustee assumes that the Meinschers have exempted the "cash surrender value" of their policies. The parties agree that the cash surrender value is the amount paid into the policy, minus any debts owed under the policy. The cash surrender value is the amount that would be paid out to the owner if the owner terminated the policy. *See* Ex. 3, at 31 ("You may withdraw all of the cash value of this certificate by sending a written request to the home office. . . . A complete withdrawal of the cash value will terminate this certificate on the date the request is received at the home office."). Nothing on Amended Schedule C indicates that the Meinschers have exempted only the cash surrender values of their policies. Rather, Amended Schedule C describes both Mildred's policy and Paul's policy and states an amount claimed for each policy. (ECF No. 16, at 20). The cover sheet explanation accompanying the Amended Schedules states that "Schedule C continues to exempt both the life insurance policies and their cash values." (*Id.* at 1). In other words, the evidence supports concluding that the Meinschers have exempted both policies and stated the policies are currently worth $13,318 and $76,475.11, respectively, in cash. The Trustee may desire to liquidate the policies for their cash value and distribute the proceeds to creditors, but

---

[5] Section 1108.053 creates exceptions to exemptions. The Trustee does not allege § 1108.053 applies.

the Meinschers have exempted the policies as opposed to their surrendered cash values. Unless and until the policies are surrendered, there is no set cash surrender value to exempt. There are simply life insurance policies that have a value, which presumably will continue to increase as the Meinschers pay premiums.

Even if the Trustee's assumption were correct, § 1108.051 explicitly allows debtors to exempt the cash value of an existing life insurance policy. The Trustee relies on *Milligan v. Trautman (In re Trautman)*, 496 F.3d 366 (5th Cir. 2007) to support his position, but *Trautman* undermines his argument. *Trautman* held "that the cash from a surrendered whole-life policy is not exempt under Texas law." 469 F.3d at 368. The Trustee admits that *Trautman* has a distinguishable fact: the co-debtor surrendered a life insurance policy that he owned and which listed his wife as beneficiary before the couple filed for bankruptcy. The couple listed the uncashed check for the cash surrender value of the policy as exempt. The trustee objected, and eventually, the Fifth Circuit sustained the objection. The Trustee here acknowledges that the *Trautman* debtors exempted the check, not the policies. (Hearing Audio, January 26, 2023 at 1:48 p.m.). Yet the Trustee maintains this distinction does not matter because, according to him, "all the language that appears [in *Trautman*] . . . is fully applicable to an owner who tries to exempt cash surrender value in a policy that has not been surrendered." (*Id.*).

*Trautman* does not apply to a policy that continues to exist. Rather, the Fifth Circuit emphasized the fact that the debtors had surrendered their policy in exchange for a check and then tried to exempt the check. *See Trautman*, 469 F.3d at 368-69. *Trautman* uses the word "surrender" (or its derivatives) twenty-one times. *Trautman* also distinguishes a surrendered policy from an existing one by referencing the Texas legislature's intent in amending the statute:

> Second, the statutory history confirms our analysis and explains what 'cash value . . . of an insurance policy' actually means. Before a 1991 amendment to the

7

> predecessor of § 1108.051 which added the term for 'cash values,' courts did not exempt even the cash value of *existing* whole-life policies because such policies were essentially savings accounts to which the debtors had constant access. Hence creditors could seize whole-life policies, destroying them. Texas, presumably desiring to protect the named, contingent beneficiaries of existing whole life policies, amended the statute to add 'cash values.' As a result, debtors cannot now garnish, seize, or claim in bankruptcy the cash values of an existing policy—a blessing to contingent beneficiaries, who now *may* later receive a death-benefit. But presumably Texas did not mean to exempt money from a surrendered whole-life policy, money a beneficiary will certainly never see.

496 F.3d at 369-70 (emphasis in original) (footnotes omitted).[6] Trautman further states that an "existing whole-life polic[y]" is "the type paradigmatically protected by § 1108.051." *Id.* at 370. Any contention that the surrendered policy and corresponding check are a factual difference without a distinction directly contradicts ***Trautman's*** reasoning. The cash value of an existing policy can be exempted.

## II.  Whether the Meinschers Exempted the Policies as Owners is of No Consequence.

The Trustee's argument focuses on the Meinschers status as owners of their respective policies. The Trustee's concentration on the Meinschers' status as owners likely flows from his assumption that Meinschers exempted the cash payout if they surrendered their policies. According to the Trustee, the statute only runs in favor of an insured or a beneficiary, not an owner. (ECF No. 19, at 3). Because the check resulting from a surrendered policy belongs to the owner, the Trustee argues the right to that check is not exempt. (*Id.*). According to the Trustee:

> Debtors have rights as the owners of the cash surrender value. But those rights are not exempt. The Debtors, as insureds, have no rights to the cash surrender value of the policies. The Debtors, as beneficiaries, have no current rights to the cash surrender value of the policies. Beneficiaries have no rights until the insured dies.

(*Id.*).

---

[6] Courts and practitioners widely accept that the word "debtors" in penultimate sentence of this quote is a typographical error. In context, the Fifth Circuit presumably meant that creditors "cannot now garnish, seize, or claim in bankruptcy the cash values of an existing policy."

8

To support his contention, the Trustee points out that exemption "applies to any benefits . . . to be provided to an insured or beneficiary," but not an owner. The Trustee also relies on footnote 5 in *Trautman*, which states that "'benefits' are things 'to be provided to an insured or beneficiary', not an owner." 496 F.3d at 371, n.5. Advancing the same argument on appeal, the Trustee also quoted *In re Brothers*:

> … [C]ash surrender values are more in the nature of an investment, they are not paid 'under' the policy, rather they are paid to the owner if the policy is cancelled, or to the beneficiary in the total of proceeds paid. Cash surrender values are available to the debtor at any time he or she might want to terminate the insurance contract, or convert the funds to paid up insurance, therefore, they are also available to the Trustee.

94 B.R. 82, 85 (Bankr. N.D. Tex. 1988) (citations omitted).

But as the Meinschers point out, the statute has been amended since *Brothers* to add "cash value" to the non-exhaustive list of benefits that may exempted. (ECF No. 47, at 9). In the paragraph of *Trautman* immediately following what the Trustee cited, the Fifth Circuit acknowledged that the 1991 amendment (three years after *Brothers*) added the term "cash value" to the exemption statute. 496 F.3d at 369. This amendment suggests that the Texas legislature may have intended to overrule this aspect of *Brothers*. Despite the lack of legislative history,[7] one court concluded that, following the amendment, "cash surrender values of qualifying policies are now expressly exemptible." *In re Young*, 166 B.R. 854, 558 (Bankr. E.D. Tex. 1994). By adding the term "cash value," perhaps the Texas legislature meant to make the exemption available to owners too because all agree the cash value of a surrendered policy is paid to the owner.

The Court declines to decide this issue of Texas law because such a determination is not necessary here. Nothing in evidence supports concluding that the Meinschers claimed their respective policies as exempt in their capacities as owners. Schedule C notes that the Meinschers

---

[7] No relevant legislative history exists.

own their respective policies, but it also lists who the insured and beneficiary are for each policy. (ECF No. 16, at 20). Nowhere does Schedule C say "Mrs. Meinscher claims this policy as exempt in her capacity as owner" or anything that would support a similar conclusion. (*Id.*). The Meinschers' responses to the Trustee's request for admissions and interrogatories do not support concluding the Meinschers exempted the policies in their capacities as owners. (Ex. 3, at 1). Further, no party disputes that the Meinschers are also insureds and beneficiaries of the policies. Because the Meinschers are the insureds on their respective policies and beneficiaries of each other's policies, and because insureds and beneficiaries can claim the exemption, reaching the owner question is unnecessary.

### III. The Meinschers Properly Exempted the Policies because the Meinschers are Insureds of their Respective Policies and Beneficiaries of their Spouse's Policies.

No party disputes that Mildred is the owner and insured while Paul is the beneficiary on the Mildred policy. Similarly, the parties agree that Paul is the owner and insured while Mildred is the beneficiary on the Paul policy. In other words, on each policy, one Meinscher spouse is the insured and the other spouse is the beneficiary.

The statute unambiguously provides an exemption for benefits "to be provided to an insured or beneficiary" under a life insurance policy. Tex. Ins. Code Ann. § 1108.051. Even the Trustee accepts this interpretation, as his argument against an owner's rights is premised on this language. Therefore, as insureds of their own policies and beneficiaries of their spouses, the Meinschers have two grounds upon which to properly claim the policies as exempt. The Court thus concludes the Meinschers properly exempted their policies.

The Trustee implied that the Meinschers cannot properly claim the exemptions because of admissions they made in response to his discovery requests. Careful examination of the Meinscher's response, however, do not support the Trustee's conclusions. The Trustee argued at

10

the hearing that the Meinschers admitted they have no rights as beneficiaries, citing Request for Admission No. 1. The Trustee requested that the Meinschers "[a]dmit that neither of the Debtors, as beneficiaries of either policy, has any right, title or interest in the cash surrender value of either of the life insurance policies disclosed at docket entry 16, page 14, asset 31." (Ex. 3, at 1). The Meinschers answered "[a]dmit." (*Id.*). Admitting they have no rights to the cash surrender value is different than admitting they have no rights to the policy at all. The statute allows exemption of "any benefits, including the cash value and proceeds of an insurance policy." The word "including" indicates a list is not exhaustive, and no one disputes that beneficiaries receive the death benefit proceeds of a life insurance policy. Because beneficiaries are entitled a benefit from a life insurance policy and the Meinschers have not disclaimed that benefit through an admission, the Meinschers have properly claimed the policies as exempt because each spouse is the beneficiary of the other spouse's policy.

To the extent that the Trustee implied the Meinscher's response to his questions about rights of insureds means the policies cannot be exempted, the Court reaches a similar result. Request for Admission No. 2 reads: "Admit that neither of the Debtors, as insureds, has any right, title or interest in the cash surrender value of either of the life insurance policies disclosed at docket entry 16, page 14, asset 31." (*Id.*). The Meinschers denied the request. (*Id.*). Related Interrogatory No. 2 inquires: "If you fail to admit [Request for Admission No. 2], say why not, citing to any statutory, case law or other authorities." (*Id.*). In response, the Meinschers listed "Mr. Meinscher's Insurance Policy Section 12.2" and "Mrs. Meinscher's Insurance Policy Section 9.2." (*Id.*). These sections define the rights of policy owners. (Ex. 3, at 36, 67). Once again, all parties agree that the owner, not the insured, is entitled to the cash surrender value once a policy is terminated. Because the check would be made out to the owner, denying that the insured has a right to the payout is

11

common sense.[8] Citing to the rights of owners (who are entitled to the check upon termination) buttresses this response. Nothing about these responses can be construed to mean the insureds have no rights to any benefit of the policy. Because they are the insureds on their respective policies, the Meinschers have properly exempted the policies.

Lastly, the Trustee argues that beneficiaries have no rights in existing policies by analogizing to a will. The Trustee posits that the owner of a policy can change a policy's beneficiary up until the moment the insured dies, just as a testator may amend or revoke a will at any time before the testator's death. To borrow the Trustee's language, something could go awry at the Thanksgiving table causing the owner (like a testator) to change his or her mind. The Trustee used the revokable will analogy to argue that beneficiaries have no (vested) rights until the insured dies.

The Trustee also cites *In re Young* to support his contention that beneficiaries only can exempt proceeds after the death of the insured. In *Young*, the debtor succeeded in exempting the death benefit of a life insurance policy under which she was the beneficiary and her husband was the insured after her husband died. 166 B.R. at 575-58. Merely because one beneficiary-debtor exempted proceeds following the insured's death does not mean that *only* after the death of the insured may a beneficiary claim the exemption. Ironically, the objecting parties in *Young* argued that the debtor could not claim the exemption because the statute referred to benefits "to be paid" in the future.[9] *Id.* at 857. *Young* overruled the objection, reasoning in part that the predecessor exemption had referred to insurance proceeds "both before or after said money or benefits is or are to be provided." *Id.* (citations omitted). In short, while *Young's* result does not require the outcome

---

[8] Interrogatory No. 2 ignores that, under these policies, the owner and insured are the same person. The Meinschers' briefing places great emphasis on that fact. The Trustee has no response to this argument.
[9] The current version of the Tex. Ins. Code § 1108.051 uses the future tense phrase "to be provided".

12

the Trustee desires, *Young's* reasoning undermines his argument that beneficiaries have no rights until the insured dies.

More importantly, the Fifth Circuit already considered the contingent rights of beneficiaries and decided that those rights in existing life insurance policies can be exempted:

> Second, the statutory history confirms our analysis and explains what 'cash value . . . of an insurance policy' actually means. Before a 1991 amendment to the predecessor of § 1108.051 which added the term for 'cash values,' courts did not exempt even the cash value of *existing* whole-life policies because such policies were essentially savings accounts to which the debtors had constant access. Hence creditors could seize whole-life policies, destroying them. Texas, presumably desiring to protect the named, contingent beneficiaries of existing whole life policies, amended the statute to add 'cash values.' As a result, debtors cannot now garnish, seize, or claim in bankruptcy the cash values of an existing policy—a blessing to contingent beneficiaries, who now *may* later receive a death-benefit. But presumably Texas did not mean to exempt money from a surrendered whole-life policy, money a beneficiary will certainly never see.

496 F.3d at 369-70 (emphasis in original) (footnotes omitted).[10] Suggesting that beneficiaries cannot avail themselves of the exemption until an insured dies contravenes *Trautman*'s reasoning.

## CONCLUSION

In summary form, the Trustee has not met his burden of persuading the Court that the exemptions are not properly claimed. The Meinschers have two proper grounds to exempt the policies. First, each spouse may exempt the policy for which they are the insured. Second, each spouse may exempt the other spouse's policy for which they are the beneficiary. Potentially third, the Meinschers might properly exempt the policy which they respectively own, though the Court declines to decide that question of law today.

IT IS THEREFORE ORDERED that the Objections to the Amended Claims of Exemptions (ECF No. 19) is OVERRULED.

---

[10] *See supra* note 6.

IT IS FURTHER ORDERED that two Thrivent Universal Life Policies ending in numbers 5629 and 5728 on ECF 16, at 20 are properly claimed as EXEMPT.

IT IS FURTHER ORDERED that the Clerk of the Court shall immediately cause a copy of this order to be served on the Debtors and the Trustee and notice of the entry of this Order to be served on all other parties in interest in this case.

# # #